1
2
3
4
5
6
7
8                  UNITED STATES DISTRICT COURT

9                 EASTERN DISTRICT OF CALIFORNIA

10

11   NORVELL ANDREW,                          Case No.: 1:22-cv-01290-KES-CDB

12              Plaintiff,                     **FINDINGS AND RECOMMENDATIONS**
                                              **FOLLOWING SCREENING OF**
13        v.                                   **PLAINTIFF'S THIRD AMENDED**
                                              **COMPLAINT**
14   UNITED STATES OF AMERICA, et al.,
                                              (Doc. 54)
15              Defendants.
                                              **14-DAY OBJECTION DEADLINE**
16

17        Plaintiff Norvell Andrew is a federal prisoner proceeding pro se and *in forma pauperis* in

18   this civil rights action.

19        I.    **RELEVANT BACKGROUND**

20        On March 26, 2025, the assigned district judge issued his Order Adopting in Part Findings

21   and Recommendations. (Doc. 49.) Judge Sherriff found that Plaintiff could proceed on her Eighth

22   Amendment *Bivens*[1] claims against Defendants Palentghi, Spheres, and Placencia for deliberate

23   indifferent to serious medical needs. (*Id*. at 4-5.) However, Judge Sherriff determined Plaintiff

24   could not state a *Bivens* action against the defendants for a failure to protect violation of the

25   Eighth Amendment. (*Id*. at 5-6.) Next, Judge Sherriff found Plaintiff's second amended complaint

26   failed to sufficiently allege a claim under the Federal Tort Claims Act (FTCA). (*Id*. at 6-7.)

27

28   _____
     [1] *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

Plaintiff was granted leave to "amend her complaint to allow her to attempt to sufficiently plead her compliance with the FTCA's administrative claim requirement and the timeliness of her filing of her FTCA claim in federal court, or to establish why equitable tolling would apply to excuse any failure to meet such FTCA deadlines." (*Id*. at 8.) Therefore, Judge Sherriff ordered the action may proceed on Plaintiff's *Bivens* claim against Palentghi, Spheres, and Placencia for deliberate indifference to Plaintiff's serious medical needs, dismissed all other claims and defendants for a failure to state a claim, excepting Plaintiff's potential FTCA claim, and directed Plaintiff, within 30 days, to file: (1) a third amended complaint including her FTCA claim and her *Bivens* claims against Defendants Palentghi, Spheres, and Placencia for deliberate indifference to Plaintiff's serious medical needs; *or* (2) written notice to the Court that Plaintiff wished to forego amendment and to proceed only on the *Bivens* claims in Plaintiff's second amended complaint against Defendants Palentghi, Spheres, and Placencia for deliberate indifference to her serious medical needs; *or* (3) a notice of voluntary dismissal if Plaintiff no longer wished to pursue this action. (*Id*. at 8-9.) Further, Judge Sherriff ordered that, unless Plaintiff responded to the Court's within 30 days, this action was to proceed "only on the *Bivens* claim" against Defendants Palentghi, Spheres, and Placencia for deliberate indifference to Plaintiff's serious medical needs. (*Id*. at 9.)

On May 2, 2025, when Plaintiff did not respond to Judge Sherriff's March 26, 2025, order, the undersigned issued the Order Finding Service of Second Amended Complaint Appropriate and Forwarding Service Documents to Plaintiff for Completion and Return Within Thirty Days. (Doc. 50.)

On June 12, 2025, when Plaintiff had failed to timely respond to the Court's order to return certain service documents, the undersigned issue an Order to Show Cause (OSC) Why Action Should Not Be Dismissed for Failure to Obey Court Order. (Doc. 51.) Plaintiff was directed to show cause in writing why she had not complied with the Court's May 2, 2025, order, or, alternatively, to return the completed service documents, within 14 days. (*Id*. at 2.)

Plaintiff filed her response to the OSC on July 8, 2025. (Doc. 52.) Plaintiff states she did not receive the Court's orders, that her mail was being tampered with, and that she had been

repeatedly denied access to her legal documentation. She also asked the Court to comply with Bureau of Prisons criteria for addressing legal mail to be opened in the presence of an inmate. Further, Plaintiff sought permission to file a third amended complaint and asked for a formal investigation into mail tampering and access to her legal documentation and property. (*Id*. at 1-4.)

On July 14, 2025, the Court issued its Order Discharging Order to Show Cause, Order Vacating Order Regarding Service Issued May 2, 2025, and Order Granting Extension of Time Within Which to File Third Amended Complaint. (Doc. 53.) As to the latter, Plaintiff was directed to file any third amended complaint within 30 days. (*Id*. at 3.)[2]

On August 12, 2025, Plaintiff filed her third amended complaint.[3] (Doc. 54.)

## II.    SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## III.    PLEADING REQUIREMENTS

### A.    Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal

---

[2] The Court also directed the Clerk of the Court to re-serve Plaintiff with Judge Sherriff's March 26, 2025, order. Further, Plaintiff's address of record now includes the following notation: "SPECIAL MAIL Open Only in the Presence of Inmate."

[3] It is dated and signed August 3, 2025.

1    quotation marks & citation omitted).

2        Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a

3 cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556

4 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must

5 set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"

6 *Id*. (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal

7 conclusions are not. *Id*. (citing *Twombly*, 550 U.S. at 555).

8        The Court construes pleadings of pro se prisoners liberally and affords them the benefit of

9 any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the

10 liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal

11 theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation

12 of a civil rights complaint may not supply essential elements of the claim that were not initially

13 pled," *Bruns v. Nat'l Credit Union Admin*., 122 F.3d 1251, 1257 (9th Cir. 1997) (internal

14 quotation marks & citation omitted), and courts "are not required to indulge unwarranted

15 inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation

16 marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not

17 sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's

18 liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

19                      **B.  Linkage and Causation**

20        Section 1983 provides a cause of action for the violation of constitutional or other federal

21 rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under

22 section 1983, a plaintiff must show a causal connection or link between the actions of the

23 defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*,

24 423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the

25 deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative

26 act, participates in another's affirmative acts, or omits to perform an act which he is legal required

27 to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740,

28 743 (9th Cir. 1978) (citation omitted).

4

C. **Supervisory Liability**

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *see e.g., Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (plaintiff required to adduce evidence the named supervisory defendants "themselves acted or failed to act unconstitutionally, not merely that subordinate did"), *overruled on other grounds by Castro v. Cnty. of Los Angeles,* 833 F.3d 1060, 1070 (9th Cir. 2016); *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983").

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009).  Accord *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based on inaction in the training and supervision of subordinates).

Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

To prove liability for an action or policy, the plaintiff "must ... demonstrate that his deprivation resulted from an official policy or custom established by a ... policymaker possessed with final authority to establish that policy." *Waggy v. Spokane Cnty. Washington*, 594 F.3d 707, 713 (9th Cir. 2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the

involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

## IV.    DISCUSSION

### A.  Plaintiff's Third Amended Complaint

On the face of the third amended complaint, Plaintiff has selected the box denoting a *Bivens* action and added boxes with check marks for the "Federal Tort Claims Act" and "§ 2241 Habeas Corpus." (Doc. 54 at 1.) Plaintiff names the following entities and/or individuals as Defendants:

United States of America

Andrew Ciolli

Kimberly Bennett

Counselor Lyons

Counselor Haslett

Unit Manager Schaffer

Counselor Beaudreau

Case Manager Bollinger

Nurse Steven Spheres

Nurse Young

Dr. Unknown Palentghi

Lieutenant Lemur

Lieutenant Heldman

Lieutenant Dewilde

Officer Barnes

Officer McClure

Officer Ceja

Officer Lopez

Officer Gene Simpson

Officer Unknown # 2

1      S.I.S.

2   (Doc. 54 at 1-2, 5.) Plaintiff seeks "to have [her] left eye [and left hand] reset," $15,000,000 in

3   damages from Defendant United States, $507,000 in damages from the remaining Defendants,

4   and "immediate release." (*Id*. at 7.)

5               **B. The Factual Allegations**

6          On or about February 20, 2020, Plaintiff arrived at USP Atwater. (Doc. 54 at 5.) She was

7   immediately placed in a cell with an active Vice Lords gang member who told Plaintiff she could

8   not live with him because "it's against gang laws for him to live with a homosexual." (*Id*.)

9   Plaintiff and the inmate promptly went to the officer's station and advised Defendant Barnes

10  about the situation. (*Id*. at 5-6.) Barnes separated the two and moved Plaintiff to an empty cell,

11  where she remained for about two weeks. (*Id.* at 6.)

12         On about March 5, 2020, Defendant Lyons directed Plaintiff to pack her belongings

13  because she was being moved and would share a cell with inmate Brooks. (*Id*.) Plaintiff asserts

14  she advised Lyons that Brooks had already indicated to Plaintiff that he did not want to share a

15  cell with homosexuals. (*Id*.) Plaintiff advised Lyons "that she did not want to die about a

16  government cell" and asked not to be placed with Brooks. (*Id*. at 8.) Further, Plaintiff "offered a

17  feasible alternative by telling Lyons there was another trans person on the unit James Mitchell"

18  and asked to be housed with Mitchell. (*Id*.) Lyons denied Plaintiff's request and indicated

19  "Mitchell could not have a celly at the moment and would remain in a single cell." (*Id*.) Lyons

20  then advised Plaintiff she could move to the cell shared with Brooks or go to special housing.

21  (*Id*.) Plaintiff told Lyons that "she was not fighting anyone for a cell and she did not know what

22  (weapons) Brooks had in his cell and [she] would rather go to SHU than be stabbed." (*Id*.) Lyons

23  "called compound" and Plaintiff was escorted "to SHU." (*Id*.) Plaintiff later received an incident

24  report "for a 306 infraction refusing to program." (*Id*.)

25         Plaintiff remained in the SHU for seven days until March 12, 2020, when she was placed

26  "back in cell 224 with inmate Brooks." (Doc. 54 at 8-9.) That same date, inmate Rosen was

27  released from the SHU and assigned to cell 224. (*Id*. at 9.) Because three persons were assigned

28  to the same cell, Plaintiff states she was "picked to move." (*Id*.) Plaintiff again advised Lyons she

1    was willing to house with inmate Mitchell. (*Id.*) Instead, Lyons housed Plaintiff in "Unit 6-B in

2    cell 109 alone" for about four days. (*Id.*)

3         On or about March 16, 2020, Defendant Haslett advised Plaintiff he believed she was

4    "trying to manipulate the system and was going to get a cellmate." (Doc. 54 at 9.) When Plaintiff

5    asked Haslett to be housed with inmate Mitchell, Haslett denied the move and housed Plaintiff in

6    "Unit 6-A with inmate James Ladson." (*Id.* at 9-10.) Ladson advised Plaintiff that it was against

7    his Jewish faith to be housed with a homosexual; the two then "spoke with the unknown officers

8    who were in the office." (*Id.* at 10.) Plaintiff and Ladson were advised by the officers that they

9    "could not do cell moves" and directed them to speak with the lieutenant during chow. (*Id.*)

10   Plaintiff and Ladson spoke with Defendant Lemur; Lemur advised that "if there were any empty

11   cells in the unit [to] tell the unit officer to move [Plaintiff]." (*Id.*) Further, Lemur stated that if the

12   officer refused to do so, Plaintiff and Ladson were to "tell them to call him (Lemur)." (*Id.*) On

13   their way back to the housing unit, Ladson and Plaintiff stopped to speak with Haslett who was

14   "in front of the housing Unit 6-B;" Haslett told them they were "not in his unit." (*Id.*)

15        Plaintiff alleges that she spoke with Defendant Bollinger on March 17, 2020, asking to be

16   moved. (Doc. 54 at 10-11.) Bollinger stated he was not responsible for cell moves and referred

17   her to Defendant Beaudreau. (*Id.* at 11.) When Plaintiff learned Beaudreau was not working on

18   that date, Plaintiff told Bollinger that inmate Ladson had pulled a knife on her the night before

19   and given Plaintiff a deadline by which to move out of Ladson's cell. (*Id.*) Bollinger called

20   Defendant Schaffer in response to Plaintiff's assertion; Schaffer told Bollinger that Plaintiff was

21   trying to manipulate the system to get a single cell. (*Id.*) Plaintiff told Bollinger she was not

22   seeking a single cell, rather she sought to live with another inmate peacefully and indicated her

23   desire to house with inmate Mitchell. (*Id.*) Further discussion was had and Bollinger called

24   Schaffer again, but Schaffer refused to allow Plaintiff to move. (*Id.*) Later that day, Plaintiff

25   spoke with Defendants Scott and Bennett, who told Plaintiff to "'get a knife.'" (*Id.*) Defendants

26   Vandenhover and Zaragoza were also present. (*Id.*) After Plaintiff returned to the shared cell,

27   Ladson continued to threaten Plaintiff. (*Id.*)

28        The following day, Plaintiff approached Defendant Ciolli during chow and explained her

situation. (Doc. 54 at 11.) Schaffer then appeared and whispered in Ciolli's ear, who then told Plaintiff to come and see him tomorrow. (*Id*. at 11-12.) When Plaintiff stated to Ciolli that "she may be dead tomorrow," Ciolli left. (*Id*. at 12.) Later that evening, Ladson threatened Plaintiff with a knife and gave her 24 hours to "be out of" their cell. (*Id*.)

On March 19, 2020, pursuant to a "call-out for medical," Plaintiff was seen by Defendants Palentghi and Young. (Doc. 54 at 12.) Upon returning to her assigned cell, Plaintiff was stabbed in the face and beaten with a lock by inmate Ladson. (*Id*.) Plaintiff defended herself before two "unknown unit officers" responded, but by then the attack had ceased. (*Id*.) Plaintiff was restrained and returned to medical. (*Id*.) Plaintiff told Palentghi that she had been attacked by Ladson due to her sexual preferences; Palentghi "crack[ed] jokes" and stitched Plaintiff's left eye to stop it from bleeding. (*Id*.) As Palentghi treated the stab wound to Plaintiff's face, the Q-Tip swab "came away a vibrant blue." (*Id*.) At one point, Palentghi commented that Plaintiff "'must be a crip you bleed blue.'" (*Id*.) Eventually Palentghi declared he was finished and released Plaintiff. (*Id*.) Once in a cell in the SHU, Plaintiff saw something protruding from her face. (*Id*. at 12-13.) She worked it free after poking and prodding it, realizing then the object was colored pencil lead. (*Id*. at 13.) Defendant Simpson responded to Plaintiff pressing "the duress button." (*Id*.) When more lead protruded from Plaintiff's face, Simpson returned her to medical. (*Id*.) After joking about how Plaintiff must miss him, Palentghi extracted more lead and swabbed the area for about 30 minutes, before stating his belief he "got most of the lead out" and that Plaintiff should be okay because most colored pencils were not toxic. (*Id*.)

On or about March 21, 2020, Defendants Lopez and Ceja approached Plaintiff in the SHU, accompanied by inmate Jefrontys Clyburn. (Doc. 54 at 13.) Clyburn told Lopez and Ceja that as an active gang member he could not live with a homosexual. (*Id*.) Lopez and Ceja replied that Plaintiff and Clyburn "were compatible on paper and that's all that matters." (*Id*.) Plaintiff asked to speak with the lieutenant on shift. (*Id*.) Simpson then responded to the area and directed Plaintiff "to submit to handcuffs for a celly." (*Id*.) Plaintiff advised Simpson she had just been stabbed and beaten with a lock for a similar reason, was in no shape to defend herself against a new attack, and had a broken hand, swollen eye, and stitches. (*Id*. at 13-14.) Simpson repeated

that Plaintiff and Clyburn were compatible on paper. (*Id*. at 14.) Plaintiff asked to see the lieutenant; Defendant Cervantes responded about an hour later and ordered Plaintiff to cuff up. (*Id*.) When Plaintiff tried to explain, Cervantes "began to scream as loud as he could to drown" Plaintiff out. (*Id*.) Cervantes threatened Plaintiff with "mace, restraints, incident reports & still being housed with Clyburn." (*Id*.) Plaintiff tried again to speak with Cervantes, but he "became belligerent." (*Id*.) Ultimately, as Plaintiff submitted to handcuffs, Clyburn was moved into the cell and his handcuffs were removed. (*Id*.) Clyburn immediately turned and punched Plaintiff, who fell to the ground, then began kicking her. (*Id*.) Officers responded by spraying chemical agents and ordering Clyburn to stop attacking Plaintiff. (*Id*.) Plaintiff asserts the attack continued "until [Clyburn] was tired," only then did Clyburn cease his attack. (*Id*.) Clyburn then told Ceja, Lopez, and Cervantes that he would kill any inmate he did not want to be celled with before submitting to handcuffs. (*Id.*)

After Clyburn's attack, Plaintiff was taken to medical and treated by Defendants Palentghi and Spheres. (Doc. 54 at 14.) Spheres restitched Plaintiff's left eye as the wound had opened. (*Id*.) Palentghi eventually told Plaintiff that her hand was broken during the altercation with inmate Ladson and provided her with a brace and an Ace bandage to wrap "her hand up once she [was] back in her assigned cell." (*Id*. at 15.) The wound on Plaintiff's face had a scab so Palentghi did not swab it and left it to heal. (*Id*.) Plaintiff complained to both Palentghi and Spheres about pain and "that her left eye is off center and constantly jumps and twitches," causing headaches. (*Id*.) Spheres stated Plaintiff probably had an orbital fracture, but it was "too expensive to fix." (*Id*.) Plaintiff was treated with Tylenol with codeine for pain as Ibuprofen "was not working and [Plaintiff] had taken a whole bottle in two (2) days." (*Id*.)

On or about April 12, 2020, while housed in the "SHU overflow unit," Plaintiff and her cellmate Ira Taylor were being escorted to the shower by Defendants McClure and Barnes. (Doc. 54 at 15.) Taylor began speaking with a "fellow gang member named Tim," who asked Taylor about Plaintiff. (*Id*.) Tim advised Taylor it was against gang law to house with Plaintiff and that Taylor should get out of the cell immediately, stating "or you know what's up." (*Id*.) The exchange was overheard by McClure and Barnes before they left the area. (*Id.*) McClure and

Barnes returned about ten minutes later, directing inmates to submit to restraints for a return to their cells. (*Id*.) When Barnes asked Plaintiff "what's going on" during the escort back to her cell, Plaintiff asked Barnes "did he not hear the conversation between Taylor and his gang brother when dude just told Taylor to get out of the cell with [Plaintiff] immediately or suffer the consequences." (*Id*. at 15-16.) Barnes then left Plaintiff in her cell. (*Id*. at 16.) About an hour later, the emergency response team arrived with Defendants Heldman and Dewilde. (*Id*.) Heldman heard Plaintiff's explanation of the situation while the others "congregated at the shower dealing with" Taylor. (*Id*.) After Taylor eventually submitted to handcuffs and was returned to their shared cell, Plaintiff states she "refused to accept Taylor" so she could "document on camera that there was a threat & [she] did not feel safe in the cell with inmate Taylor." (*Id*.) Dewilde called the response team to the cell and Plaintiff began speaking "on tape" to Heldman, explaining her life was in danger if she was forced to house with Taylor. (*Id*.) Heldman ignored Plaintiff and advised she would be given three verbal commands to comply with restraints; a refusal to submit would result in chemical agents. (*Id*.) Plaintiff submitted to restraints and Taylor was brought to the cell where his restraints were removed. (*Id*.) Taylor then began punching and kicking Plaintiff before Taylor was forcibly removed. (*Id*.) Plaintiff states she was placed in the shower to be seen by medical but was left there "for hours" until Defendant Placencia arrived. (*Id*.) Placencia told Plaintiff there was nothing wrong with her because he "was about to get off work & left." (*Id*.)

Concerning her administrative remedies, Plaintiff states she "filed BP 8, 9, 10, and 11 on every one (1) of these issues yet never received a response to any of them." (Doc. 54 at 16.) Plaintiff asserts she filed a "Form 95 Federal Tort Claim Act to Western Regional Office" after she left Atwater and completed the process while housed in "AUSP Thompson." (*Id*.) Plaintiff states that in November or December 2021, she was "working on her lawsuit yet was shipped from" that facility "in May of 2022 to USP Coleman I and did not receive her property … until June of 2022." (*Id*.) Plaintiff then asserts she "began working on the case but was forced to sign on protective custody because she had just left the RHU program in AUSP Thompson and as a check-in [Plaintiff] was in bad standings with her [indecipherable] and could not be on the

compound." (*Id*. at 16-17.) Next, Plaintiff asserts she "went to the SHU and did not receive her legal work until August of 2022." (*Id.*) Plaintiff further asserts she was immediately transferred to the SHU at USP Coleman II, before she obtained her legal work in late August and "completed the suit at hand and got it to this court." (*Id.*) Plaintiff states the complaint "was about two (2) months late due to [her] constantly being sent to SHU denied access to legal work & being shipped from prison to prison." (*Id.*)

Next, Plaintiff contends all Defendants were "negligent in the scope of their duties." (Doc. 54 at 17.) She maintains the Bureau of Prisons "makes it mandatory that all inmates have a cellmate," and that "the only thing they look for is prior incidents & geographics, so sexual preference, gang affiliation, religions, get lost in the equation." (*Id*.) Plaintiff contends that "mandating cellmates is to attempt to eliminate suicides. But it increases homicides & assaults" when staff place incompatible inmates together, refusing to move them. (*Id*.) She asserts the United States "is negligent through policies that were created & implement[ed] by its employees, who seem to forget that inmate safety is also in the policy, and to fail to protect inmates creates an [independent] due process violation because BOP staff fail to follow their own procedural rules." (*Id*.)

Under a heading titled "Habeas Corpus § 2241," Plaintiff states the Bureau of Prisons has "continuously placed" her in imminent danger. (Doc. 54 at 17.) She asserts the water is contaminated at USP Coleman II. (*Id*.) Plaintiff alleges inmates are placed in unsafe conditions and that her "eye is giving [her] real problems & being ignored." (*Id*.) She states the "wrong continues on every level" and asks "to be released so" she can "go get the medical care" she needs. (*Id*.)

### C.  Plaintiff's Claims

Plaintiff asserts a cause of action titled "Deliberate Indifference, Negligence, Failure to Protect, Cruel & Unusual Punishment." (Doc. 54 at 5.)

#### *Bivens Actions*

Prisoners may bring claims under 42 U.S.C. section 1983 for violations of constitutional or other federal rights by persons acting "under color of state law." Section 1983 "provides a

1  cause of action for the deprivation of any rights, privileges, or immunities secured by the

2  Constitution and laws of the United States." *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 508 (1990)

3  (quoting 42 U.S.C. § 1983). A civil rights action under section 1983 is the proper remedy for a

4  constitutional challenge to the conditions of imprisonment. *See Preiser v. Rodriguez*, 411 U.S.

5  475, 499 (1973) ("[A] § 1983 action is a proper remedy for a state prisoner who is making a

6  constitutional challenge to the conditions of his prison life, but not to the fact or length of his

7  custody").

8      An action under *Bivens* is the federal analog to suits brought against state officials under

9  section 1983. *Iqbal*, 556 U.S. at 676-77 (quoting *Hartman v. Moore*, 547 U.S. 250, 254, n.2

10  (2006)). *Bivens* actions and section 1983 claims "are identical save for the replacement of a state

11  actor under § 1983 by a federal actor under *Bivens*." *Van Strum v. Lawn*, 940 F.2d 406, 409 (9th

12  Cir. 1991). Pursuant to *Bivens*, under limited circumstances, federal actors can be liable for a

13  violation of an individual's civil rights. *Minneci v. Pollard*, 565 U.S. 118, 122–23 (2012). A

14  plaintiff may sue a federal officer in his or her individual capacity for damages for violating the

15  plaintiff's constitutional rights. *See Bivens*, 403 U.S. at 397. To state a claim a plaintiff must

16  allege: (1) that a right secured by the Constitution of the United States was violated, and (2) that

17  the alleged violation was committed by a federal actor. *Kandi v. Mgmt. & Training Corp.*, No.

18  1:16-cv-00794-BAM (PC), 2017 WL 2081117, at *3 (E.D. Cal. May 15, 2017).

19              ***Plaintiff Improperly Asserts Previously Dismissed Claims***

20      As noted above, Judge Sherriff issued an order on March 26, 2025, addressing the claims

21  asserted in Plaintiff's second amended complaint. (Doc. 49.) Following de novo review, Plaintiff

22  was permitted to proceed on her *Bivens* claims for deliberate indifference to serious medical

23  needs against Defendants Palentghi, Spheres, and Placencia. (*Id*. at 2, 4-5, 8.) Judge Sherriff also

24  found Plaintiff failed to state a claim against Defendant Young concerning deliberate indifference

25  to serious medical needs and against Defendant United States. (*Id*. at 2, 8.) Plaintiff was granted

26  leave to amend her complaint to assert her claims under the Federal Tort Claims Act (FTCA)

27  against the United States. (*Id*. at 6-8.) However, concerning Plaintiff's failure to protect claims

28  against any defendant, Judge Sherriff found *Bivens* did not extend to failure to protect claims and

1  dismissed those claims *without* leave to amend. (*See id.* at 5-6, 8.)

2      Therefore, Plaintiff may not state Eighth Amendment failure to protect claims against

3  Defendants Barnes, Beaudreau, Bennett, Bollinger, Ceja, Ciolli, Dewilde, Haslett, Heldmann,

4  Lemur, Lopez, Lyons, McClure, Schaffer, and Simpson. Plaintiff was not granted leave to amend

5  her failure to protect claims against those individuals because such claims are not cognizable and

6  the claims against the previously named defendants — including those named above in Plaintiff's

7  third amended complaint — were dismissed. (*See* Doc. 49 & 50.)

8      To the extent Plaintiff intended to assert failure to protect claims against named

9  Defendants "Officer Unknown #2" and "S.I.S." in her third amended complaint, any such claim is

10  not cognizable for the same reasons Eighth Amendment failure to protect claims are not

11  cognizable against the other named Defendants.

12      Given the above, the undersigned does not address any failure to protect allegation

13  asserted in Plaintiff's third amended complaint as such claims are not cognizable in this action.

14  *See Marquez v. Rodriguez*, 81 F.4th 1027, 1031 (9th Cir. 2023) (failure to protect claim not

15  cognizable under *Bivens*); *see also Garraway v. Ciufo*, No. 1:17-cv-00533-KJM-GSA, 2025 WL

16  1027523, at *4-6 (E.D. Cal. Apr. 7, 2025) (granting government's motion for reconsideration of

17  prior denial of government's motion for judgment on the pleadings and dismissing Garraway's

18  Eighth Amendment failure to protect claims with prejudice, citing *Marquez*).[4] Accordingly, the

19  undersigned will recommend dismissal of those claims.

20                    ***Deliberate Indifference to Serious Medical Needs***

21      Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a

22  prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need

23  is serious if failure to treat it will result in '"significant injury or the unnecessary and wanton

24  infliction of pain."'" *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (9th Cir. 2014) (quoting *Jett v.*

25  *Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059

26  

27  [4] *See also Chambers v. Herrera*, 78 F.4th 1100, 1105 (9th Cir. 2023) (plaintiff's "Eighth Amendment failure to protect claim fails to state a claim under *Egbert*"); *Fisher v. Hollingsworth*, 115 F.4th 197, 206 (3d Cir. 2024) ("there is no implied constitutional damages action against federal officials who fail to protect prisoners from the criminal

28  acts of their fellow inmates").

(9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096 (quotation marks omitted)).

As to the first prong, indications of a serious medical need "include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation & internal quotation marks omitted); accord *Wilhelm*, 680 F.3d at 1122; *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) ("Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain").

As to the second prong, deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer*, 511 U.S. at 835 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Deliberate indifference is shown where a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847. In medical cases, this requires showing: (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096). "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett*, 439 F.3d at 1096 (citing *McGuckin*, 974 F.2d at 1060).

15

1    Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060

2    (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from

3    which the inference could be drawn that a substantial risk of serious harm exists,' but that person

4    'must also draw the inference.'" *Id*. at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison

5    official should have been aware of the risk, but was not, then the official has not violated the

6    Eighth Amendment, no matter how severe the risk.'" *Id*. (quoting *Gibson*, 290 F.3d at 1188).

7    To prevail on a deliberate-indifference claim, a plaintiff must also show that harm resulted

8    from a defendant's wrongful conduct. *Wilhelm*, 680 F.3d at 1122; *see Jett*, 439 F.3d at 1096;

9    *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002) (prisoner alleging deliberate indifference

10   based on delay in treatment must show delay led to further injury).

11   As before, the undersigned finds Plaintiff states plausible deliberate indifference to serious

12   medical needs claims against Defendants Palentghi, Spheres, and Placencia. (*See* Doc. 46 at 15-

13   16.) Once again, the undersigned finds Plaintiff fails to state a claim against Defendant Young.

14   The only factual allegation involving Young is Plaintiff's assertion that she was seen by Young

15   on March 19, 2020, before Ladson's attack. Plaintiff makes no further reference to Young, nor

16   does she assert any allegation that can liberally construed as deliberate indifference. (*See* Doc. 46

17   at 16 ["No facts indicate Young took any action or inaction amounting to deliberate indifference

18   to Plaintiff's serious medical needs"].)

19   Even assuming Plaintiff was given leave to amend her claim against Defendant Young,

20   she fails to cure the deficiency identified in this Court's previous screening order. Because

21   Plaintiff's third amended complaint is deficient for the same reasons as those articulated in the

22   Court's screening order involving her second amended complaint, and because Plaintiff has failed

23   to remedy that deficiency, the Court assesses that Plaintiff cannot cure her pleadings and, thus,

24   that leave to amend would be futile. *See Hartman v. CDCR*, 707 F.3d 1114, 1129-30 (9th Cir.

25   2013) (affirming dismissal of first amended complaint and finding leave to amend futile where

26   complaint's allegations belied plaintiff's entitlement to relief).

27   In sum, the undersigned will recommend this action proceed on Plaintiff's deliberate

28   indifference to serious medical needs claims against Defendants Palentghi, Sphere, and Placencia,

16

1    and that any claim against Defendant Young be dismissed without leave to amend.

2    *Plaintiff's FTCA Claims*

3    As indicated above, the assigned district judge granted Plaintiff leave to amend her tort

4    claims against Defendant United States. (Doc. 49 at 6-8.) Specifically, Plaintiff was advised that

5    she had failed to sufficiently allege that she had timely complied with the relevant claim filing

6    deadline and had timely filed this action. (*Id.* at 6.) Further, the assigned district judge held:

> [T]o allege timely filing under the FTCA, plaintiff must allege facts
> sufficient to show both (1) that she timely filed [the] claim with the
> Federal Bureau of Prisons ("BOP") within two years of its accrual,
> and, (2) if BOP issued a denial of her claim, that she filed this case
> within six months of that denial, or in the case of a failure to meet
> either or both of those deadlines, that she is entitled to equitable
> tolling as to any deadline that was not met. *See* [*U.S. v.*] *Wong*, 575
> U.S. [402,] 420 [(2015)].
>
> Plaintiff's alleged injuries occurred during the timeframe from
> February 20, 2020, to April 21, 2020. *See generally SAC*. Plaintiff's
> SAC fails to establish that she timely filed any administrative FTCA
> claims within two years of the accrual of her claims, and therefore
> she fails to establish a cause of action under the FTCA. However,
> plaintiff attached to her initial complaint letters from the Federal
> Bureau of Prisons denying her administrative claims under the
> FTCA. Doc. 1 at 35–36. These denial letters appear to reflect that
> plaintiff timely filed her FTCA claims with BOP within two years of
> her alleged injuries, but plaintiff did not include those letters with her
> SAC and there are no such allegations in the SAC. An amended
> complaint "supersedes the original, the latter being treated thereafter
> as non-existent." *Lopez v. Chertoff*, 656 F.3d 851, 857 (9th Cir.
> 2011). If plaintiff elects to file a third amended complaint, she must
> include all required allegations concerning her FTCA claim,
> including that she timely filed her administrative claims within two
> years of the claims' accrual.
>
> It also appears that plaintiff may not have timely filed her FTCA
> claim in federal court. The BOP letters denying her administrative
> FTCA claims are dated between November 24, 2021, and December
> 13, 2021. *Id.* at 33–36. Plaintiff filed her initial complaint with this
> Court on September 29, 2022, over nine months later, well after the
> six-month statutory deadline under 28 U.S.C. § 2401(b). Doc. 1.
>
> While the limitations periods in 28 U.S.C. § 2401(b) are subject to
> the doctrine of equitable tolling, a claimant has a high bar to make
> such a showing. *Wong*, 575 U.S. at 411. To claim equitable tolling,
> a litigant must establish "(1) that he has been pursuing his rights
> diligently, and (2) that some extraordinary circumstance stood in his
> way and prevented timely filing." *Smith v. Davis*, 953 F.3d 582, 588
> (9th Cir. 2020) (internal quotations omitted). In any third amended
> complaint, plaintiff must sufficiently allege facts establishing why
> equitable tolling would apply to excuse her filing of her complaint in

17

1    federal court after the six-month statutory deadline.

2    (Doc. 49 at 6-7.)

3        Generally, the United States only waives sovereign immunity if an FTCA claim is: (1)

4    against the United States; (2) for money damages; (3) for injury or loss of property, personal

5    injury, or death; (4) that was "caused by the negligent or wrongful act or omission of any

6    employee of the Government;" (5) while such employee is "acting within the scope of their

7    employment;" and (6) "under circumstances where the United States, if a private person, would

8    be liable to the claimant in accordance with the law of the place where the act or omission

9    occurred." 28 U.S.C. § 1346(b)(1). In addition, FTCA claims are subject to a statute of

10   limitations. Specifically, "the FTCA provides that a tort claim against the United States 'shall be

11   forever barred' unless it is presented to the "appropriate Federal agency within two years after

12   such claim accrues" and then brought to federal court 'within six months' after the agency acts on

13   the claim." *United States v. Wong*, 575 U.S. 402, 405 (2015) (quoting 28 U.S.C. § 2401(b)).

14       Although the Court expressly admonished Plaintiff that any amended complaint must be

15   complete in and of itself, without reference to any prior complaint (*see* Doc. 49 at 8; *see also* Doc.

16   19 at 15 [same] & Doc. 35 at 18 [same]), she fails to identify or reference in the amended

17   complaint the dates she purportedly filed the "BP 8, 9, 10, and 11" forms, and does not provide a

18   date for the purported filing of "Form 95" to the "Western Regional Office." Relevant here, the

19   presiding district judge extended to Plaintiff "**one final opportunity** to amend her complaint to

20   allow her to attempt to sufficiently plead her compliance with the FTCA's administrative claim

21   requirement and the timeliness of her filing of her FTCA claim in federal court." (Doc. 49 at 8)

22   (emphasis in original.) As pled, the Court cannot discern whether Plaintiff presented her claim

23   against the United States within two years of its accrual. Nor has Plaintiff provided any

24   documentation in support of her FTCA claims asserted in the third amended complaint. Thus,

25   even liberally construed and accepting all facts as true, Plaintiff fails to state any cognizable

26   FTCA claim against Defendant United States.

27       Again, because Plaintiff's third amended complaint is deficient for the same reasons as

28   those previously articulated and because Plaintiff has failed to remedy those deficiencies, the

1    Court assesses that Plaintiff cannot cure her pleadings and, thus, that leave to amend would be

2    futile. *See Hartman*, 707 F.3d at 1129-30.

3    ***Plaintiff's Request for a Release from Custody is Improper***

4        Plaintiff seeks a release from custody so that she may seek medical treatment, citing to "§

5    2241 Habeas Corpus." (Doc. 54 at 1, 17.) Thus, it appears Plaintiff intends for her third amended

6    complaint to also serve as a petition for writ of habeas corpus pursuant to 28 U.S.C. section 2241.

7        Habeas relief is available if the prisoner's claim in the petition attacks the legality or

8    duration of the petitioner's confinement. *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005); *Preiser v.*

9    *Rodriguez*, 411 U.S. 475, 484-86 (1973). And habeas relief is not cognizable if a favorable

10   judgment for the petitioner would not "necessarily lead to his immediate or earlier release from

11   confinement." *Nettles v. Grounds*, 830 F.3d 922, 935 (9th Cir. 2016).

12       "A habeas corpus action is the proper mechanism for a prisoner to challenge the fact or

13   duration of his confinement. In contrast, a civil rights action pursuant to 42 U.S.C. § 1983, where

14   the defendants are state actors, or an action pursuant to *Bivens* … where the defendants are

15   federal actors, is the proper method for a prisoner to seek monetary or injunctive relief based on a

16   challenge to the conditions of that confinement." *McCoy v. Warden, USP Atwater*, No. 1:24-cv-

17   00121-NODJ-SKO (HC), 2024 WL 774922, at *1 (E.D. Cal. Feb. 26, 2024) (citations omitted).

18       Here, Plaintiff's claims do not attack the legality or duration of her confinement.

19   *Wilkinson*, 544 U.S. at 82; *Preiser*, 411 U.S. at 484-86; *see Ramirez v. Galaza*, 334 F. 3d 850,

20   859 (9th Cir. 2003) ("habeas jurisdiction is absent, and a Section 1983 action is proper, where a

21   successful challenge to a prison condition will not necessarily shorten the prisoner's sentence").

22   Nor would a favorable judgment for Plaintiff in this case necessarily lead to her immediate or

23   earlier release from confinement. *Nettles*, 830 F.3d at 935.

24       Therefore, to the extent Plaintiff seeks relief in the form of a release from custody, such

25   relief is improper in this civil rights action.

26              **D. Screening Summary**

27       In summary, the undersigned concludes that the Eighth Amendment failure to protect

28   claims against Defendants Barnes, Beaudreau, Bennett, Bollinger, Ceja, Ciolli, Dewilde, Haslett,

Heldmann, Lemur, Lopez, Lyons, McClure, Schaffer, and Simpson were previously dismissed by the assigned district judge on March 26, 2025, and thus did not consider those claims. Further, the undersigned will recommend that: (1) the Eighth Amendment failure to protect claims asserted against Defendants "Officer Unknown #2" and "S.I.S." be dismissed because, like those previously dismissed, such claims do not state a cognizable *Bivens* claim; (2) this action proceed on Plaintiff's deliberate indifference to serious medical needs claims against Defendants Palentghi, Spheres, and Placencia; (3) any claim against Defendant Young be dismissed without leave to amend; (4) the FTCA claim against the United States be dismissed without leave to amend; and (5) any relief in the form of a release from custody be denied.

## V. CONCLUSION AND RECOMMENDATION

Based upon the foregoing, the undersigned **HEREBY RECOMMENDS** that:

1. To the extent Plaintiff reasserts any previously dismissed claims against Defendants Barnes, Beaudreau, Bennett, Bollinger, Ceja, Ciolli, Dewilde, Haslett, Heldmann, Lemur, Lopez, Lyons, McClure, Schaffer, and Simpson, any claims against these individuals be dismissed without leave to amend;

2. Plaintiff's Eighth Amendment failure to protect claims against Defendants "Officer Unknown #2" and "S.I.S." be dismissed without leave to amend;

3. Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Young be dismissed without leave to amend;

4. The FTCA claim against Defendant United States be dismissed without leave to amend;

5. This action proceeds only on Plaintiff's deliberate indifference to serious medical needs claims against Defendants Palentghi, Spheres, and Placencia; and

6. Any requested relief in the form of a release from custody, referring to 28 U.S.C. section 2241, be denied as improper.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written

objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen 15-page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

    Dated:   **October 24, 2025**                         

UNITED STATES MAGISTRATE JUDGE